## VICTOR ROUMAGE *v.* PIERRE BLATRIER.

Where a lessee for years, and his surety, abandon the premises, the lessor, for the preservation of the property and the protection of his rights, may collect the rent due from the sub-tenants and procure new ones, for the benefit of the lessee or surety; and where the lessor has never refused to place the premises under their control on their complying with the lease, such acts will not be considered as amounting to a cancelling of the lease, and the lessee and his surety will be bound for the difference between the amount of the lease and that received from the sub-tenants.

Where pending an action to enjoin an execution issued on a judgment obtained by a lessor against the surety of his lessee, for the amount of a lease for years, to be paid from time to time as the rent may become due under the lease, the lessor sells the premises, without any stipulation that the sale is made subject to the lease, the lease will be thereby dissolved.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Eyma*, for the plaintiff.

*Buscail*, for the appellant.

SIMON, J. The defendant, who, as an absentee, has been sued through his agent or attorney in fact, is appellant from a judgment which declares the dissolution of a lease by him made to one Fessard, of certain premises situated in New Orleans, by a notarial act, executed on the 8th of February, 1841, to take effect from the 1st of November ensuing; and which perpetuates the injunction obtained by the plaintiff, for all rents which would have been due under said lease, and under a judgment heretofore rendered between the parties to the same, from the 1st day of November, 1843.

It appears from the record that the lease in question was executed by the defendant's agent to Fessard, for the term of five years, to run from the 1st of November, 1841, for and in consideration of an annual rent of three thousand dollars, to be paid at the rate of two hundred and fifty dollars for each month, at the end of every month; and that the plaintiff intervened in the act, and bound himself *in solido* with the lessee, for the punctual payment of the rent for and during the whole period of the lease. The lessee took possession of the premises, paid the first two months, but, having ceased to pay, a suit was brought against him for the rent due and to become due, and a judgment was rendered against him, on the 20th of May, 1842, with privilege on the goods provisionally seized, for the sum of $14,000, $1,000 of which was due and payable at the time the judgment was rendered, and the balance to be collected by executions to be issued monthly, according to the lease. The rent was paid up to the 1st of April, 1843, when on the 22d of May, a suit was instituted by the lessor against Roumage for one months' rent, and a judgment was rendered against the latter accordingly. Previous, however, to the institution of said suit, Roumage had written a letter to the appellant's agent, dated 1st May, 1843, representing the impossibility from considerable losses him experienced, of his continuing to pay him any longer "*la différence qui èxiste entre le loyer que je reçois, et celui que vous me rèclamez chaque mois;*" and further stating: "*Il y a bien peu de générosité de sa part* (the lessor's) *d'avoir voulu profiter de la circonstance où m'a placé la fuite de M. Fessard pour maintenir ses mêmes prètensions auxquelles je me suis sonmis tant que j'ai pu le faire, mais que les circonstances m'obligent de cesser.*" He adds also: "*Vous avez ci bas les noms des locataires qui habitent la maison, qui payent très éxactement chaque mois, &c. Je me plais à croire, Monsieur, que vous apprécierez la situation où je me trouve, et que vous accepterez à l'aimable la proposition que je vous fais, qui est la seule que je puis vous offrir, dans l'interet du propriétaire que vous représentez.*" This proposition, far from being accepted, was followed by the suit already alluded to, and, on the 29th of June following, another suit was brought against Roumage for one months' rent previously due, and for the remainder of the whole

term, expiring on the 1st of November, 1846 ; whereupon, af-
ter issue joined by the defendant, a judgment was rendered
against him, not only for the amount of one months' rent, but
also for the sum of $10,250, for the remainder of the lease, to
be paid, to wit : the sum of $1,750, within ten days from the date
of the judgment (29th of November, 1843) ; and $250 on the
first day of every month thereafter until the 1st of November,
1846. It is proper to remark that the issue joined by the defend-
ant consisted in a general denial, and in the plea that the plain-
tiff had no right to obtain judgment as prayed for ; and that after
it was admitted that Fessard had left the State, the letter writ-
ten by Roumage to the lessor's agent, above recited, was pro-
duced in evidence by the plaintiff.

On the 15th of December, an execution having issued on the
last judgment, the present suit was instituted, and an injunction
subsequently sued out, for the purpose of obtaining the dissolu-
tion of the lease from the 1st of May, 1843, and of perpetuating
the injunction. The principal grounds upon which the plaintiff
bases his demand, are, that since said judgment was obtained,
the petitioner has learned that the lessor's agent, had, on or
about the 15th of October, 1843, leased the whole or part of the
premises to new tenants, without the consent of the petitioner,
and without giving him any notice of the fact ; that said lessor
has thereby accepted the annulling of said lease, in accordance
with the letter written to him by the petitioner ; that the con-
duct of the lessor's agent must be considered as a breach of the
said contract of lease ; and that when the said agent obtained
the judgment complained of, he well knew that said lease had
been dissolved by the effect of his letting the whole, or part of
the premises, himself to other persons.

This action was answered by the defendant, who first except-
ed to the plaintiff's demand on the grounds that the latter had
no right to ask for the dissolution of the lease, as he is not the
principal party to the contract, but only an accessary ; and that
the matter in controversy has been settled by two judgments
rendered against him, &c. The defendant further pleaded the
general issue, and claimed in reconvention a sum of $1,200

damages, for the trouble and expense resulting from this suit, &c,

The judgment appealed from was founded mainly on the grounds that by subsequently leasing portions of the premises to other persons, the defendant, through his agent, had violated his obligations; that obligations are extinguished by the effect of the resolutory condition : and that whether Roumage be considered as the co-obligor, or as the surety of the lessee, he is equally at liberty to avail himself of the violation of the contract by the lessor, and to discharge himself from his obligations.

The evidence shows that divers tenants who had originally contracted with the plaintiff, continued after the date of his letter, to occupy the portions of the premises which they had previously possessed, and that when Barrière, the defendant's agent, undertook to collect the rent, he received it under the same terms as had been agreed on between the tenants and Roumage.    In the month of November, however, Barrière thought proper to lease divers portions of the premises to other tenants; and when he settled with them for the rent at subsequent periods, he gave them receipts in his own name ; those receipts, fifteen in number, were produced in evidence.    They bear the dates of July, August, September, October, November, December, 1843, and January and February, 1844, and specify, *without any exception*, that the sums paid were received by Barrière: " *En déduction de ce que doit* V. *Roumage, en sa qualité de caution de Charles Fessard, locataire principal.*"    This reservation exists not only upon the receipts given to the old tenants, but also upon those given to the new ones, who, although it is stated by the witnesses Lecourt, Gosseth, and others that Barrière did not tell them that he was leasing the premises for account of Roumage, were sufficiently apprized thereby that Fessard was the principal lessee, and that the amounts paid were received on account of the rent due by Roumage as Fessard's surety.    Divers sums were also paid by the tenants to the sheriff, who gave them receipts accordingly, and it seems from the testimony adduced that, after the date of Roumage's letter already recited, he abstained from calling upon the tenants for the

payment of the rents, did not even collect the rents due for April, and that Barrière uniformly collected the rents from the time of the sheriff's return of the writ of provisional seizure (1st of August, 1843). The record contains also two accounts current, to wit: one by which Roumage is debited with the sum due by him on the 30th of November, 1843, being $1,750, and credited with the rents received by Barrière in August, September, October, November, and December, 1843 ; and the other, a statement of the sums due monthly by the tenants, and collected by Barrière from the month of May inclusively, to the 15th of October, 1843. And it is further admitted that the receipts of Joas (one of the tenants) since August, are in the name of Barrière.

Under this state of facts, how can the plaintiff pretend that his lessor has violated his obligations, and that he, plaintiff, is discharged from his contract ? It appears from the very letter upon which he relies, and which contains the proposals which, he says, were subsequently accepted by the defendant, that he was previously in the habit of paying the difference which existed between the sums which he received for rent from the sub-tenants, and the amount due every month under the lease ; he complains of the hardship of the circumstance which subjected him to complying with the defendant's pretensions, but his proposals do not go further than intimating to the lessor that *he will cease paying the difference* to which he had previously and regularly subjected himself since the departure of the lessee, and that the defendant ought to be satisfied with the rent paid monthly by the sub-tenants. Was this proposition accepted so as to release the plaintiff from his obligations ? and do the acts of the defendant's agent amount to an acceptance ?

We have already seen that immediately after the plaintiff's letter reached the defendant, the latter instituted a suit against him for one month's rent ; that, shortly after, he brought another suit against him for the amount to be due for the remainder of the whole term ; and that, notwithstanding the production of his letter, said plaintiff was declared, in the judgment rendered on the 29th of November, 1843, to be liable for the whole amount of the rent until the expiration of the lease. At

the time of, and before said judgment was rendered, from which no appeal has ever been taken, the defendant had already received several months' rent from the sub-tenants, and a large portion of the receipts produced in evidence in this case were in existence; nay, the lessor's agent, from the month of August, and perhaps before, had declared to the sheriff that he would in future collect the rents. The plaintiff, since the month of April, had determined to cease collecting said rents; he had notified the defendant of his determination, and of his refusal to pay any further difference. This was clearly a declaration on his part that he abandoned the premises; and what was the lessor to do? He took care of the property abandoned by the lessee and his co-obligor; kept the old sub-tenants, procured new tenants, and collected the rents for the benefit of the plaintiff, with the express declaration that it was *on account of the rent due under the lease;* and we are at a loss to conceive how the judge *a quo* could come to the conclusion that such acts of the lessor amounted to a violation of his obligations, and consequently to the dissolution of the lease. The plaintiff has not shown that he ever called upon the defendant to re-deliver to him possession of the premises; he had never been disturbed in his previous possession as long as he paid the rent; the proceedings had against him were the consequence of his failing to comply with his obligations; and if the lessor was subsequently compelled, for the preservation of the property, and for the protection of his rights, to collect the rents, and to sub-lease the premises to other tegants, this was the plaintiff's own fault, and not the lessor's, who gave him the benefit of the collection of the rents, and who never refused to replace the premises under his control, on his complying with the contract which he had abandoned.

Pothier, in his *Contrat de Louage, No.* 151, says: " *Lorsque l'empêchement qui a empêché le locataire d'entrer en jouissance de la maison qui lui a été louée, ou* qui l'a empêché de la continuer *est un empêchement qui ne vient que* de la part du locataire, *il ne peut pas pour cela demander la remise des loyers. Il suffit que la maison soit exploitable, que le locateur soit prêt à en accorder la jouissance au locataire, et que le locataire* puisse l'occuper, ou par lui ou par d'autres, pour que les loyers soient dus." This, says the author,

is in conformity with the fourth principle which is laid down in No. 142, which is : *"Le conducteur, locataire, ou fermier ne peut demander remise du loyer, lorsque* l'empêchement est venu de sa part. *Il suffit, en ce cas, qu'il y ait* une jouissance possible, ou usage possible de la chose, ou par lui ou par d'autres, pour que le loyer en soit du. This principle is fully applicable to the present case. Here, the lessee abandoned the premises a short time after the lease was in operation ; his co-obligor continued to pay the rent until May, 1843, when he thought proper to discontinue the payment of said rent, and to notify the lessor of his determination ; he also abandoned the premises, and declined exercising any further control over them. Was not this an impediment (*empêchement*) resulting from his own act? What shows that there was no possibility of his resuming the use or enjoyment of the property, whenever he pleased? The lease had not expired ; the lessor had only taken a temporary possession, or administration of the premises ; he received the rents for the benefit of the lessee, and because the latter had refused to collect them any longer ; those rents were expressly applied to the discharge of the lessee's obligations ; and it appears to us that this was no violation of the contract, that it never ceased to be operative, and that the plaintiff, who had no reason to complain, never ceased to owe the rent which he originally contracted to pay. In the case of *Christy* v. *Casenave* (2 Mart. N. S. 453), this court recognized the principles that if, on a lease for years, the lessee abandon the premises, the landlord may demand the rent for the whole term, and that *such lessee is bound to pay the sum between what the lessor has been able to rent the premises for, since they were abandoned, and that which was stipulated between the parties to the original contract.* This doctrine was again adopted in the case of *Reynolds* v. *Swain* (13 La. 198). It is just and equitable, and should govern the present case.

With this view of the question, we must conclude that the lease was not dissolved, and that the judgment enjoined had not ceased, when this suit was instituted, to have its effect ; but as said judgment is for the whole amount of the rent due, or to be due for the whole term, (until the 1st of November, 1846), we think it ought not to preclude the plaintiff from demanding the

credits to which he may be entitled from the collection of the rents, or from showing the circumstances which, at a subsequent period, may have destroyed the effect or operation of the lease, and consequently of the said judgment. It has been asserted in the argument, not denied, and even assented to, that the premises had been sold during the pendency of this action ; and we find, accompanying the record, a newspaper which was filed, in which the property is advertised for sale, and in which it is stated that it was rented last year (1843) for $250 per month, and produces now (January 1845) $180 per month. The property does not appear to have been intended to be sold subject to the lease ; and, if these facts are true, we are not ready to say that the lease should not be considered as dissolved from the time of the sale. Be this as it may, we are disposed to extend now to the plaintiff all the relief which he may be legally entitled to ; and, without its being necessary for him to institute a new action for that purpose, we think the rights of the parties, as they grow out of the lease and judgment in question, subject to be modified, affected, or even destroyed by their subsequent acts, can very properly be investigated and liquidated in this action. The judgment enjoined being prospective in its effect and operation, we see no reason, why such effect and operation should not be enquired into in this suit, to a further extent than the circumstances that existed at the time of its institution ; and we are of opinion that justice requires that this case should be remanded for further proceedings, for the purposes : 1st, of enquiring into the fact of the sale of the premises during the pendency of this suit, into the circumstances under which it was made, and into the effect of such sale on the lease in question ; 2d, of liquidating the balance which may be due to the appellant for the rent of the premises up to the time of said sale, after deducting from the amount due under the lease, the various sums which the lessor's agent may have received from the tenants, during the period that the property was abandoned by the plaintiff ; 3d, of fixing the liability of said plaintiff for the payment of the sum which he really owes under the prospective judgment last rendered against him, as the co-obligor, or surety *in solido* of the lessee ; and of perpetuating the

injunction by him obtained, as to the difference which may result from the said investigation and liquidation, between the amount of said judgment and the sum really due to the lessor at the time of the sale of the premises; and 4th, of making the purchaser and actual owner of the property, a party to these proceedings, to show cause why the lease under consideration should not be dissolved, and rendered ineffectual from the date of said sale to its expiration, and the injunction perpetuated accordingly.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed, that the injunction be provisionally maintained, and that this case be remanded to the court *a quâ* for further proceedings, and final adjustment, under the legal principles recognized in this opinion, after making the purchaser and actual owner of the premises a party to this controversy. The costs of this appeal to be borne by the plaintiff and appellee.